UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SALLY SANZONE, et al.,          )
                                )
          Plaintiffs,           )
                                )
     v.                         )     Case No. 4:16 CV 923 CDP
                                )
MERCY HEALTH, et al.,           )
                                )
          Defendants.           )

## MEMORANDUM AND ORDER

Plaintiffs Sally Sanzone and Gene Grasle worked at different health care facilities operated by defendant Mercy Health. When they retired from Mercy in 2003 and 2013, respectively, they began receiving pension benefits from the Mercy Health MyRetirement Personal Pension Account Plan (the "Plan" or the "Mercy Plan"), and continue to do so. Plaintiffs bring this action against Mercy Health, the Mercy Health Benefits Committee, and the Mercy Health Stewardship Committee.

Plaintiffs allege that defendants have underfunded the Plan and have violated various provisions of the Employment Retirement Income Security Act (ERISA), including their duties under ERISA as fiduciaries or sponsors of the Plan. They contend that the Mercy Plan does not qualify for ERISA's "church plan" exemption because is it not maintained by an organization whose principal purpose is providing benefits for employees of a church. Plaintiffs also seek a

declaration that ERISA's "church plan" exemption as applied to the Plan violates the Establishment Clause of the First Amendment. In alternative claims, plaintiffs seek relief under state law.

I agree with defendants that the Mercy Plan is an ERISA-exempt church plan and, further, that plaintiffs lack standing to bring their Establishment Clause claim. Therefore, I do not have subject-matter jurisdiction over any of plaintiffs' ERISA and constitutional claims. Without federal jurisdiction over those claims, I have no jurisdictional authority to consider plaintiffs' state law claims, so I will dismiss this case in its entirety without prejudice for lack of jurisdiction.

## Background

Mercy Health is a 501(c)(3) nonprofit corporation operating one of the largest Catholic healthcare systems in the United States, with twenty-nine acute care hospitals, eleven specialty hospitals, and several hundred physician practices and outpatient facilities. Mercy Health offers a retirement plan for its employees, with more than 40,000 participants who are current or former employees of Mercy Health. The Mercy Health Benefits Committee is the Plan Administrator. The Mercy Health Stewardship Committee oversees and monitors the Plan's financial status. Mercy Health is the Plan's Sponsor.

The Plan was originally established in 1960 as "the Retirement Plan for Employees of the Religious Sisters of Mercy of the Union in the United States of

America, Province of St. Louis." In 1991, it was renamed the Retirement Plan for Employees of the Sisters of Mercy of the Americas, St. Louis. Sponsorship of the Plan was transferred to the Sisters of Mercy Health System (now Mercy Health) in March 2007. In 2011, the name of the Plan was changed to its current name, the Mercy Health MyRetirement Personal Pension Account Plan.[1] The Plan specifically states its intention to be maintained as a church plan, and the Internal Revenue Service has recognized it as a church plan since April 1999.[2] Church plans are not considered to be ERISA plans and are exempt from compliance with ERISA's requirements. 29 U.S.C. § 1003(b)(2).

Plaintiffs Sanzone and Grasle are former employees of Mercy Health. Sanzone retired from Mercy Health in 2003 and began receiving pension benefits under the Plan. Grasle retired in 2013 and likewise began receiving pension benefits under the Plan. Both continue to receive benefits, and neither claim that their benefits have been reduced. In this putative class action,[3] plaintiffs claim that the Plan is not a church plan and is therefore governed by ERISA. They seek equitable relief and statutory penalties against Mercy Health, the Benefits Committee, and the Stewardship Committee, alleging that the Plan violates several

[1] Defts.' Exh. 8, ECF #150-8, Plan.

[2] *Id.*; Defts.' Exh. 9, ECF #150-9, IRS Letter.

[3] In their second amended complaint, plaintiffs bring their claims individually and "on behalf of all others similarly situated." However, class certification has not yet been sought or granted on the second amended complaint.

provisions of ERISA and that defendants breached their fiduciary duties under ERISA. Plaintiffs also seek alternative relief under the Establishment Clause and under state law.

## The Second Amended Complaint

Plaintiffs bring their complaint in thirteen counts.

In Counts 1 through 8, plaintiffs seek a declaratory judgment that the Mercy Plan is not a church plan and, further, that it must comply with ERISA's requirements and take steps to be brought into compliance with ERISA. They also seek monetary penalties for the Plan Administrator's failure to meet certain statutory obligations under ERISA. They bring their ERISA claims as follows:

- Count 1 – for equitable relief under 29 U.S.C. §§ 1332(a)(2), 1332(a)(3), and 1109(a);

- Count 2 – for violating reporting and disclosure provisions under 29 U.S.C. §§ 1022, 1023, 1024(b)(3), 1021(d)(1), 1021(f), and 1025(a)(1);

- Count 3 – for failing to provide minimum funding under 29 U.S.C. § 1082;

- Count 4 – for failing to establish the Plan pursuant to a written instrument meeting ERISA requirements under 29 U.S.C. § 1102;

- Count 5 – for failing to establish a trust that meets ERISA requirements under 29 U.S.C. § 1103;

- Count 6 – to clarify participants' rights to future benefits under 29 U.S.C. § 1132(a)(1)(B);

- Count 7 – for civil penalties under ERISA for violations of 29 U.S.C. §§

1021(d)(1), 1021(f), and 1025(a)(1); and

- Count 8 – for breach of fiduciary duties under 29 U.S.C. § 1132(a)(2).

Count 9 of the complaint is a contingent claim, alleging that if the Plan is an ERISA-exempt church plan, then the exemption as applied to the Plan violates the Establishment Clause of the First Amendment of the Constitution.

In Counts 10 through 13, plaintiffs seek alternative relief under state law for breach of contract, promissory estoppel, unjust enrichment, and breach of fiduciary duty.

Defendants seek dismissal of all of plaintiffs' ERISA and Establishment Clause claims under Fed. R. Civ. P. 12(b)(1) for this Court's lack of subject-matter jurisdiction over the claims. Defendants also seek dismissal of five of plaintiffs' eight ERISA claims under Rule 12(b)(6) for failure to state a claim. In addition, defendants seek a general merits determination that the Plan qualifies as an ERISA-exempt church plan, thereby subjecting all of plaintiffs' ERISA claims to dismissal. Finally, defendants contend that with the dismissal of plaintiffs' federal claims, I should decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

For the following reasons, I do not have subject-matter jurisdiction over plaintiffs' ERISA and Establishment Clause claims and will grant defendants' motion to dismiss these claims. With no original jurisdiction over these claims, I

have no authority to exercise supplemental jurisdiction over plaintiffs' remaining state law claims; and no independent jurisdictional basis exists for me to consider these claims. They will likewise be dismissed.

## Discussion

Defendants invoke both Rule 12(b)(1) and 12(b)(6) to dismiss plaintiffs' federal claims. I consider the Rule 12(b)(1) challenge first because all other defenses are moot if I lack subject-matter jurisdiction.

Defendants base their jurisdictional argument on their claim that plaintiffs lack standing to raise any of their federal claims. I agree that plaintiffs lack standing to bring their Establishment Clause claim and arguably lack standing to bring some of their ERISA claims. However, in conducting a factual review of this Court's jurisdiction, I find that federal question jurisdiction does not exist over any of plaintiffs' ERISA claims because ERISA does not govern the Plan at issue. Although defendants do not raise lack-of-federal-question as a specific basis to dismiss these claims, I may consider jurisdictional issues not raised by the parties. *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884); *see also In re Gaines*, 932 F.2d 729, 731 (8th Cir. 1991) (recognizing federal court's inherent power to determine, as a preliminary matter, subject-matter jurisdiction). Because the Court's "very power to hear the case" is at stake, I may consider matters outside the pleadings in determining whether, factually, this Court has subject-

matter jurisdiction. *Osborn v. United States*, 918 F.2d 724, 729-30 (8th Cir. 1990) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

A.   ERISA Claims

ERISA generally requires private employers offering pension plans to adhere to a statutory framework designed to ensure plan solvency and to protect plan participants. But "[c]hurch plans are not ERISA plans" and are exempt from complying with ERISA's requirements. *Chronister v. Baptist Health*, 442 F.3d 648, 651 (8th Cir. 2006). Accordingly, if the Plan at issue here is a church plan, no federal question exists over plaintiffs' purported ERISA claims because the Plan is not covered by ERISA. *Id. See also Koval v. Washington Cty. Redevelopment Auth.*, 574 F.3d 238, 244 (3d Cir. 2009) (district court lacks subject-matter jurisdiction over benefits plan that is exempt from ERISA); *Kemp v. International Bus. Machines Corp.*, 109 F.3d 708, 714 (11th Cir. 1997) (no federal question jurisdiction over claims challenging non-ERISA plan); *NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, 979 F. Supp. 2d 513, 521 (D.N.J. 2013) (any liability for administering non-ERISA plan does not arise under ERISA).

For the following reasons, I conclude that the Mercy Plan here is a church plan and is not subject to ERISA. The ERISA claims raised in Counts 1 through 8

of the second amended complaint fail to present a federal question that would bring the claims within this Court's subject-matter jurisdiction. They must therefore be dismissed.

Since its enactment in 1974, ERISA has exempted "church plans" from compliance with ERISA's requirements. 29 U.S.C. § 1003(b)(2). Initially, a church plan was defined only as "a plan established and maintained . . . for its employees . . . by a church or by a convention or association of churches[.]" 29 U.S.C. § 1002(33)(A). In 1980, however, Congress expanded the category of plans "established and maintained . . . by a church" to include plans

> maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

29 U.S.C. § 1002(33)(C)(i).

In recent years, several church-plan participants have challenged the continued application of the church-plan exemption to their respective plans, arguing that while the statute now exempts plans maintained by a principal-purpose organization rather than by a church, the statute nevertheless continues to require that such plans be "established" by a church in order to qualify for the exemption. In *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652

(2017), the Supreme Court rejected this argument. Examining the statutory construction of § 1002(33)(C)(i) and Congress's purpose in enacting the statute, the Court held that a plan maintained by a principal-purpose organization under § 1002(33)(C)(i) qualifies as a church plan, without regard to whether or not a church established the plan. *Stapleton*, 137 S. Ct. at 1663.[4]

Plaintiffs concede that, under *Stapleton*, church plans are not restricted to only those established by churches. They raise several arguments, however, that the entity maintaining the Mercy Plan at issue here does not meet the definition of a principal-purpose organization under ERISA and thus that the Plan falls outside the church-plan exemption.[5] I disagree.

1. *Who Maintains the Plan?*

Plaintiffs first argue that Mercy Health is the organization that "maintains" the Plan, and because Mercy Health's principal purpose is the provision of health care and not to administer or fund the Plan, it cannot be considered a principal-purpose organization under § 1002(33)(C)(i). Plaintiffs aver that to "maintain" a

---

[4] "ERISA provides (1) that a 'church plan' means a 'plan established and maintained . . . by a church' and (2) that a 'plan established and maintained . . . by a church' is to 'include[] a plan maintained by' a principal-purpose organization." *Stapleton*, 137 S. Ct. at 1663.

[5] Although the plan participants in *Stapleton* raised some of these arguments at the district court level – and specifically, that the hospital entities were not associated with a church and that an internal benefits committee cannot be considered a principal-purpose organization – they did not raise them before the Supreme Court. *See Stapleton*, 137 S. Ct. at 1657 n.2. The Court therefore did not decide these issues and cautioned that its opinion should not be read to express a view as to how they should be resolved. *Id.*

plan means to commit to and assume ultimate responsibility for providing benefits, and to continue the plan, which necessarily includes the authority to modify or terminate the plan. Plaintiffs contend that because Mercy Health is the entity with these responsibilities, it is the entity that "maintains" the Plan under § 1002(33)(C)(i).

Several provisions of ERISA include the term "maintain," but no provision defines the term. When a term goes undefined in a statute, courts must give the term its ordinary meaning. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012); *Lion Oil Co. v. EPA*, 792 F.3d 978, 981 (8th Cir. 2015). Definitions from standard English-language dictionaries can assist in this effort, as well as meanings given the term by other courts when considered in the same context. *Taniguchi*, 566 U.S. at 566-67; *Owners Ins. Co. v. Jefferson*, No. 13-00713-CV-W-DW, 2014 WL 12601511 (W.D. Mo. Oct. 8, 2014) (using dictionaries and other courts' meanings).

*Black's Law Dictionary* provides several meanings for the word "maintain," the most relevant being: "1. To continue (something)"; and "4. To care for (property) for purposes of operational productivity or appearance; to engage in general repair and upkeep[.]" Maintain, *Black's Law Dictionary* (10th ed. 2014). *Webster's* defines "maintain" as "to keep in an existing state (as of repair, efficiency, or validity)"; "to continue or persevere in"; "sustain"; and "to support

or provide for." Maintain, *Merriam-Webster's II Collegiate Dictionary* (10th ed. 2002). In the business context, the *Cambridge Dictionary* defines "maintain" as "to make something continue in the same way or at the same level." *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/maintain (last visited May 31, 2018).

Plaintiffs argue that in order to have the authority to "continue" something, as several dictionary definitions allude to, the entity must likewise have the authority to terminate that something. Plaintiffs contend that because Mercy Health is the only entity with authority to terminate the Plan under the Plan's terms, then it necessarily is the organization that "maintains" the Plan under § 1002(33)(C)(i). Not surprisingly, defendants seize upon the alternative meaning of "maintain" and argue that because the Benefits Committee as Plan Administrator is charged under the Plan with the duties to care for the operational productivity of the Plan, preserve it from failure or decline, and continue the Plan at such a level to ensure its operation, the Benefits Committee is necessarily the entity that "maintains" the Plan under § 1002(33)(C)(i). To the extent these positions are based on dictionary definitions, both are plausible. However, when I consider the dictionary definitions in conjunction with other courts' treatment of the term "maintain" in the context of ERISA-exempted plans, I conclude that for purposes of § 1002(33)(C)(i), the Benefits Committee is the entity that maintains the Plan.

In *Medina v. Catholic Health Initiatives*, 877 F.3d 1213 (10th Cir. 2017), the Tenth Circuit considered the term "maintain" as I consider it here, that is, under § 1002(33)(C)(i) in determining whether an entity is a principal-purpose organization for church plan status. That court examined several dictionary definitions of "maintain" as well as Congress's use of the term in other statutes and concluded that in the context of a principal-purpose organization under ERISA, "maintain" means that the organization "cares for the plan for purposes of operational productivity." *Medina*, 877 F.3d at 1226. It determined that plaintiffs' "view that 'maintain' must include the power to terminate or modify [was] contrary to the term's ordinary usage[.]" *Id.* at 1225.

In *Crosby v. California Physicians' Serv.*, 279 F. Supp. 3d 1074 (C.D. Cal. 2018), the district court considered the term "maintain" in a similar context in determining whether a plan was exempt from ERISA as a "governmental plan," which, under 29 U.S.C. § 1002(32), means "a plan established or *maintained* for its employees" by the government. (Emphasis added.) In finding that the California Association of Professional Employees Benefit Trust (CAPE) maintained the plan and not the County of Los Angeles, the court reasoned:

> There is no evidence that the County engages in any claims administration or communicates with members about plan coverage. The plan administrator is CAPE. . . . Defendants make benefits determinations and communicate those decisions to members. CAPE is 'solely responsible for the distribution of the [summary benefits and coverage] for each benefit plan offered.' Thus there is no evidence

that Plaintiffs' plan is maintained by the County.

*Crosby*, 279 F. Supp. 3d at 1081 (alteration in *Crosby*).  In *Hariri v. Reliance Standard Life Ins. Co.*, No. 5:15-cv-03054-EJD, 2017 WL 3422029 (N.D. Cal. Aug. 9, 2017), another district court examined the term "maintain" in the same context and found the governmental entity in that instance (Santa Clara County) to maintain the plan at issue given evidence that it, *inter alia*, performed all of the day-to-day administrative and claims processing activities; received and distributed most of the policy certificates; provided claims assistance and claim forms; recorded participants' payroll and benefits payment information; and calculated payroll deductions and start and stop dates of deductions for plan participants.  *Id.* at *5.  The court found that the County's involvement with the plan was extensive and more than just ministerial, *id.*, and concluded that "[u]nder the totality of the circumstances, the only reasonable inference to be drawn from the evidence is that the County 'maintained' the LTD plan."  *Id.* at *6.

Here, the evidence and information before the Court shows that, under the totality of the circumstances, the Benefits Committee "maintains" the Mercy Plan. First, plaintiffs' complaint identifies the Benefits Committee as having the "sole responsibility for administration of the Plan" and "all discretionary powers and authority necessary to carry out the provisions of the Plan."  (Sec. Amd. Compl., ECF #145 at paras. 118, 136.)  The complaint further delineates some of the

Committee's specific duties and responsibilities, including:

> plan administration; interpreting the Plan to determine all questions arising in the administration, interpretation and application of the Plan; adopting rules for the Plan; employing accountants, actuaries, counsel, specialists and other persons necessary to help carry out the Committee's duties and responsibilities under the Plan; issuing directions to the Trustee concerning all benefits which are to be paid from the Trust Fund pursuant to the provisions of the Plan; directing the Trustee's exercise of its power in the administration and investment of the Trust Fund; making all decisions and determinations concerning the right of any person to a benefit under the Plan; requiring each Participant Employer to keep such books, records, and other data as it deems necessary for the proper administration of the Plan; exercising discretion to determine that the Participating Employers pay or reimburse costs and expenses of the Plan; and monitoring other fiduciaries.

(*Id.* at para. 137.) In addition to these duties identified by the plaintiffs, the Plan also directs the Benefits Committee to, *inter alia*, engage in claims administration and communicate with members about plan coverage; approve and/or provide claims forms and election forms for participants; comply with all reporting and disclosure requirements; provide consent regarding who shall become participating employers; determine the effective date of the Plan with respect to employees, the classification of employees, and specify rules regarding years of service; and inspect and audit the Trustee's records. Notably, the Plan provides that the Benefits Committee's decisions are final, conclusive, and binding – including on the Plan Sponsor, that is, Mercy Health.

While plaintiffs are correct that Mercy Health is the sole entity that can

modify or terminate the Plan, the totality of the circumstances shows that the Benefits Committee is the entity that actually "maintains" the Plan as that term is ordinarily used in the context most relevant here.

>    2.    *Is the Benefits Committee an Organization?*

Plaintiffs argue that if the Benefits Committee is considered to be the entity that maintains the Plan, it nevertheless cannot be considered an "organization" under § 1002(33)(C)(i) because it merely is an internal subset of Mercy Health and does not have a distinct, separate existence.

As with the term "maintain," several provisions of ERISA include the term "organization," but none define it specifically. Notably, however, while ERISA does not define "organization" as a stand-alone word, it does define "employee organization" to mean ". . . any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan[.]" 29 U.S.C. § 1002(4). With this definition, it appears that ERISA contemplated an organization to include a committee existing for the purpose of dealing with an employee benefit plan. Such is the case with the Benefits Committee. An examination of dictionary definitions and other authority supports this conclusion.

*Webster's* defines "organization" as "an administrative and functional

structure." Organization, *Merriam-Webster's II Collegiate Dictionary* (10th ed. 2002). In the *Cambridge Dictionary*, "organization" is defined as "a group of people who work together in an organized way for a shared purpose." *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/organization (last visited May 31, 2018). Similarly, *Black's Law Dictionary* defines "organization" as "a body of persons (such as a union or corporation) formed for a common purpose." Organization, *Black's Law Dictionary* (10th ed. 2014). And the Tenth Circuit in *Medina* explicitly found that a subcommittee of a larger non-profit organization can itself be an "organization" under § 1002(33)(C)(i). *Medina*, 877 F.3d at 1226. I have found no definition, and plaintiffs point to none, that requires an "organization" to be a wholly independent and separate entity from a larger group of which it is a part.

The Benefits Committee is a body made up of five members, with one member designated as the chairperson of the committee. Its common purpose is to administer the Plan in accordance with its terms and with such powers and authority as is necessary to carry out the Plan's provisions.[6] The Committee's specific responsibilities are set out in the Plan; and its interpretations, decisions, and determinations of any matter under the Plan are conclusive, final, and binding

_____

[6] Defts.' Exh. 8, ECF #150-8, Plan at § 9.6.

upon all persons, including Mercy Health.[7]

Because the Benefits Committee is a body of persons formed for a common and particular purpose and has specific and exclusive responsibilities to further this purpose, it meets the dictionary definition of "organization" as that term is ordinarily used. When considered with ERISA's reference to such a group as a form of "organization" under the statute, I conclude that for purposes of § 1002(33)(C)(i), the Benefits Committee is an "organization."

3.  *Are Mercy Health and the Benefits Committee Controlled by or Associated with a Church?*

To qualify as a church plan under § 1002(33)(C)(i), a plan must be for "the employees of a church or a convention or association of churches," and the principal-purpose organization itself must be "controlled by or associated with" a church or a convention or association of churches. Plaintiffs argue that neither Mercy Health (as the employer) nor the Benefits Committee (as the principal-purpose organization) is "controlled by or associated with" a church. For the following reasons, I disagree.

a.  Mercy Health

"The term employee of a church or a convention or association of churches includes [] an employee of an organization . . . , which is exempt from tax under [26 U.S.C. § 501] and which is controlled by or associated with a church or a

---

[7] *Id.* at § 9.6(b)(ii).

convention or association of churches[.]" 29 U.S.C. § 1002(33)(C)(ii)(II).[8] An

organization is "associated with a church or convention or association of churches"

if it "shares common religious bonds and convictions with that church or

convention or association of churches." 29 U.S.C. § 1002(33)(C)(iv). Mercy

Health meets this definition.

Mercy Health Ministry is an organization within the Roman Catholic

Church, created by the Church's canon law as a "public juridic personality" to

pursue its purpose "to embody the mission of healing ministry of Jesus in the

Roman Catholic Church, consistent with the teaching and laws of the Church[.]"[9]

It carries out its activities through Mercy Health (formerly known as Sisters of

Mercy Health System).[10] Members of the Ministry are those persons serving as

members of the Board of the Directors of the Health System and are appointed

under the Ministry's Bylaws and the Bylaws of the Health System.[11] A majority of

the Members must be Catholic and the four Members comprising "Class A

Members" must be Catholic. If religious Sisters of Mercy are willing, able, and

---

[8] The parties do not dispute that Mercy Health is a tax exempt organization under 26 U.S.C. § 501.

[9] Defts.' Exh. 1, ECF #150-1, Vatican Decree.

[10] Defts.' Exh. 2, ECF #150-2, Canonical Statutes.

[11] *Id.*; Defts.' Exh. 3, ECF #150-3, Ministry Bylaws.

qualified to serve, Class A Members must be Sisters of Mercy.[12]  All Members

have obligations imposed by the canonical statutes to "operate in accordance with

the teaching, discipline, and laws of the Roman Catholic Church."[13]

Mercy Health, the corporate arm of the Ministry, is listed in the Official

Catholic Directory.[14]  Courts view an organization's listing in the Official Catholic

Directory as a public declaration by the Roman Catholic Church that that

organization is associated with the Church.  *See, e.g., Overall v. Ascension*, 23 F.

Supp. 3d 816 (E.D. Mich. 2014); *Catholic Charities of Maine v. City of Portland*,

304 F. Supp. 2d 77 (D. Me. 2004); *Hartwig v. Albertus Magnus Coll.*, 93 F. Supp.

2d 200 (D. Conn. 2000).  The IRS also considers "[a]ny organization listed in this

directory [as] associated with the Roman Catholic Church in the United States."

*See* IRS General Counsel Memo. 39007, 1983 WL 197946, at *4 (July 1, 1983).

In short, by listing Mercy Health in the Official Catholic Directory, the Roman

Catholic Church has publicly declared Mercy Health to be a Catholic organization.

*See Overall*, 23 F. Supp. 3d at 831.

Additionally, there is substantial evidence that Mercy Health is governed by

and operates in furtherance of the principles of the Roman Catholic Church.

Mercy Health's Articles of Incorporation state that it operates exclusively for

---

[12] Defts.' Exh. 3, ECF #150-3, Ministry Bylaws.

[13] Defts.' Exh. 2, ECF #150-2, Canonical Statutes.

[14] Defts.' Exh. 6, ECF #150-6, Directory.

religious, charitable, scientific, and educational purposes and, further, operates

> (i) to serve the mission of the Roman Catholic Church and Mercy
> Health Ministry . . . to succeed and carry on the health care ministries
> conducted by the . . . "Sisters of Mercy"[], a religious order of the
> Roman Catholic Church, in its charitable apostolate and health
> services; (ii) to evidence the policies of the Sisters of Mercy and
> Mercy Health Ministry and governing its charitable apostolate and
> health services; (iii) to witness to Christ's concern for the care of the
> sick and injured and the teachings of the Roman Catholic Church
> regarding Christian health services and charity[.][15]

The Articles further state that Mercy Health adheres to and is guided by the *Ethical
and Religious Directives for Catholic Health Services* of the National Conference
of Catholic Bishops as approved by the United States Conference of Catholic
Bishops, as applied by the Diocesan Bishops.[16] Mercy Health is accountable to the
Holy See and is prohibited from taking certain actions without approval of the
Holy See.[17] It is required to report annually to the Holy See and give "evidence
that the integrity of faith and morals is preserved and that the use of the temporal
goods and the apostolic activity of the Ministry are in accord with its purposes."[18]

Such extensive indicia of Mercy Health's shared common religious bonds
and convictions with the Roman Catholic Church and the interwoven nature of its
relationship with the Church conclusively demonstrates that it is "associated with a

---

[15] Defts.' Exh. 4, ECF #150-4, Art. of Incorp.

[16] *Id.*

[17] Defts.' Exh. 2, ECF #150-2, Canonical Statutes.

[18] *Id.*

church" as required under § 1002(33)(C) in order for its employees to be covered under a church plan.

        b.     Benefits Committee

Plaintiffs aver that the Benefits Committee is an internal subset of Mercy Health. Given that Mercy Health is associated with a church, application of simple logic as the Supreme Court did in *Stapleton* shows that the Benefits Committee must therefore necessarily be associated with a church:

Premise 1: Mercy Health is associated with a church.

Premise 2: Mercy Health includes the Benefits Committee.

Deduction: The Benefits Committee is associated with a church.

*See Stapleton*, 137 S. Ct. at 1658-59; *see also Medina*, 877 F.3d at 1227 ("as a matter of logic, a subdivision wholly encompassed by a larger entity shares that entity's affiliations."). Plaintiffs' claim to the contrary fails.

        4.     *Is the Plan Disqualified as a Church Plan?*

To qualify for the church-plan exemption, "substantially all of the individuals included" in a church plan must be deemed employees of a church. 29 U.S.C. § 1002(33)(B)(ii). If "less than substantially all" of a plan's participants are such employees (or their beneficiaries), then the plan does not qualify for the exemption. *Id.* Plaintiffs contend that a number of participants in the Mercy Plan are employees of affiliates of Mercy Health that are secular, for-profit, taxable

entities and that therefore these individuals cannot be considered employees of a church. Although plaintiffs claim that these non-church employees who participate in the Plan are of such a number so as to disqualify the Plan from church-plan status under § 1002(33)(B)(ii), the allegations in the complaint lead me to conclude otherwise.

In their second amended complaint, plaintiffs specifically aver that Mercy Health has more than 40,000 current and former employees[19] and that "[t]he more than 40,000 participants in the Mercy Plan are or were employees of Mercy,"[20] which, as described by plaintiffs, is "a non-profit healthcare system."[21] Because Mercy Health is associated with a church (*see* discussion above), its employees are "employee[s] of a church or a convention or association of churches." 29 U.S.C. § 1002(33)(C)(ii)(II). Accordingly, because the Mercy Plan covers more than 40,000 participants who are or were Mercy Health employees, and Mercy Health's past and current employees number over 40,000, it follows that "substantially all" of the 40,000+ Plan participants are Mercy Health employees who, under § 1002(33)(C)(ii)(II), are employees of a church.

Against these specific averments made in their complaint, plaintiffs' general assertion that the Mercy Plan covers more than an insubstantial number of

---

[19] ECF #145 at paras. 1, 19, 40.

[20] *Id.* at para. 170.

[21] *Id.*

employees who do not work for a church or a tax-exempt entity, with nothing more, is insufficient for me to conclude that the Mercy Plan fails to qualify as a church plan.

5.    *The Mercy Plan is a Church Plan Exempt from ERISA.*

For all of the foregoing reasons, the Mercy Plan at issue in this case is maintained by a church-associated principal-purpose organization for the provision of benefits for the employees of a church or a convention or association of churches, and whose membership does not disqualify it as a church plan under 29 U.S.C. § 1002(33)(B)(ii).  Because the Mercy Plan satisfies the statutory requirements for church-plan exemption under ERISA, the Plan is not an ERISA plan and no federal question jurisdiction exists over plaintiffs' purported ERISA claims.  *Chronister*, 442 F.3d at 651.

The claims raised in Counts 1 through 8 of plaintiffs' second amended complaint will therefore be dismissed for lack of subject-matter jurisdiction.

B.    Establishment Clause

Article III, § 2 of the United States Constitution limits federal jurisdiction to actual cases and controversies.  The "threshold requirement" imposed by Article III is that those who seek to invoke the power of federal courts must allege an actual case or controversy.  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (citing *Flast v. Cohen*, 392 U.S. 83, 94-101 (1968); *Jenkins v. McKeithen*, 395 U.S. 411,

421-425 (1969) (opinion of Marshall, J.)).  *See also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982).  A plaintiff in federal court must therefore "'allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction.'"  *Id.* (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)).  In class action litigation, the named plaintiffs purporting to represent a class must establish that they, personally, have standing to bring the cause of action.  If the named plaintiffs cannot maintain the action on their own behalf, they may not seek such relief on behalf of the class.  *O'Shea,* 414 U.S. at 494; *Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1196-97 (8th Cir. 1998).  Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

For Article III standing, plaintiffs must show:  (1) that they suffered an "injury in fact," (2) that a causal relationship exists between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision.  *Lujan*, 504 U.S. at 560-61; *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000).  Abstract injury is not enough to demonstrate injury in fact.  Plaintiffs must allege that they have sustained or are in immediate danger of sustaining some direct injury as a result of the challenged conduct.  *O'Shea*, 414 U.S. at 494 (citing *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)).  The injury or threat of injury

must be concrete and particularized, actual and imminent; not conjectural or hypothetical. *Id.* (citing *Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969); *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *United Pub. Workers v. Mitchell*, 330 U.S. 75, 89-91 (1947)). *See also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). This "injury-in-fact" requirement applies equally to claims concerning the Establishment Clause. *Valley Forge Christian Coll.*, 454 U.S. at 489-90.

Here, plaintiffs make no specific allegations to suggest that they would have a better funded pension if the church-plan exemption did not apply to the Mercy Plan. Plaintiffs do not allege a concrete harm or that the relief they seek would redress an alleged injury. While plaintiffs raise the specter of a potentially underfunded Plan in the future without ERISA protections, they make no claim of any specific or concrete injury suffered by them as a consequence of being a participant in a church plan. "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be certainly impending to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal quotation marks omitted). "[W]ere all purely speculative increased risks deemed injurious, the entire requirement of actual or imminent injury would be rendered moot, because all hypothesized, nonimminent injuries could be dressed up as increased risk of future injury." *National Res. Def. Council v. EPA*, 464 F.3d

1, 6 (D.C. Cir. 2006) (internal quotation marks and citation omitted).

Accordingly, plaintiffs' asserted Establishment Clause claim fails to meet the constitutional requirement that a plaintiff demonstrate harm that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). Plaintiffs have therefore failed to carry their burden of demonstrating that they have standing under Article III to bring the claim, because they cannot show that they have suffered or will immediately suffer a concrete injury in fact if the Plan is permitted to proceed as a church plan and remain exempt from ERISA. I will therefore dismiss the claim raised in Count 9 of plaintiffs' second amended complaint for lack of subject-matter jurisdiction.

## State Law Claims

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Where a district court does not possess original jurisdiction over any claim, it cannot exercise supplemental jurisdiction under § 1367. *See Myers v. Richland Cty.*, 429 F.3d 740, 749 (8th Cir. 2005).

Because I do not have original subject-matter jurisdiction over plaintiffs' ERISA and Establishment Clause claims, I have no authority to exercise supplemental jurisdiction over the remaining state law claims. Nor is there any

independent jurisdictional basis for me to consider the claims.  I will therefore dismiss the claims raised in Counts 10 through 13 of plaintiffs' second amended complaint for lack of jurisdiction.[22]

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendants' Motion to Dismiss Plaintiffs' Consolidated Second Amended Class Action Complaint [150] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is dismissed without prejudice for lack of subject-matter jurisdiction.

An appropriate Judgment is entered herewith.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 27th day of August, 2018.

---

[22] Plaintiffs, of course, are free to pursue these claims in an appropriate state court if they so choose.