UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SALLY SANZONE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:16 CV 923 CDP |
| | ) | |
| MERCY HEALTH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

The Eighth Circuit affirmed my decision on defendants' motion to dismiss that the Mercy Health retirement and pension plan at issue in this case is a church plan under the Employee Retirement Income Security Act of 1974 (ERISA) and thus is exempt from ERISA coverage and requirements.  *See Sanzone v. Mercy Health*, 954 F.3d 1031 (8th Cir. 2020).  The court remanded the matter, however, for me to determine whether the deprivation of ERISA protections confers Article III standing on plaintiffs for their alternative claim that applying the church-plan exemption violates the Establishment Clause of the First Amendment.  *Id.* at 1047.  Because plaintiffs' claimed deprivations do not establish a concrete injury, plaintiffs lack the requisite standing to pursue their constitutional claim.  I will therefore dismiss plaintiffs' Establishment Clause claim for lack of jurisdiction and

will not reinstate plaintiffs' state law claims.

The background of this litigation and the nature of plaintiffs' claims are thoroughly set out in my Memorandum and Order entered August 27, 2018 (ECF 175) and will not be repeated here.  In that Memorandum and Order, I concluded that the Mercy Health MyRetirement Personal Pension Account Plan (the "Plan" or "Mercy Plan"), under which plaintiffs Sally Sanzone and Gene Grasle currently receive pension benefits, satisfied the statutory requirements for church-plan exemption under ERISA and thus that the Plan was not an ERISA plan.  With this determination that the Mercy Plan was a church plan exempt from ERISA, plaintiffs' alternative claim that the church-plan exemption is unconstitutional as applied to the Mercy Plan became ripe for consideration.  I concluded, however, that plaintiffs lacked standing to bring the claim given that their hypothesized allegation that the Plan could potentially be underfunded in the future was insufficient to constitute an injury in fact.[1]

The Eighth Circuit agreed and affirmed on both issues.  *See Sanzone*, 954 F.3d at 1046 ("[T]he Plan, as alleged, is a church plan."), and *id.*("We agree with the district court that the underfunding here does not meet [the] standard [for

---

[1] Having dismissed plaintiffs' federal claims, I determined to not exercise supplemental jurisdiction over plaintiffs' state law claims and dismissed those without prejudice.

standing].").  However, the Eighth Circuit identified injuries in addition to underfunding that plaintiffs asserted in their complaint that could possibly confer standing on their Establishment Clause claim – "most importantly, the deprivation of ERISA protections."  *Id.* at 1047.  "Those protections include ERISA's funding requirements, Pension Benefit Guarantee Corporation insurance, and notice requirements.  But for the church-plan exemption, Sanzone would be able to sue under ERISA to enforce those protections.  The inquiry, therefore, is whether the deprivation of the specified ERISA protections constitutes sufficient injury to confer standing."  *Id.*  For the following reasons, it does not.

### Legal Standard

Article III standing "presents a question of justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim."  *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 (8th Cir. 2012) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 92-94 (1998)).  Accordingly, "Article III standing must be decided first by the court[.]"  *Id.*; *see also City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007).

For Article III standing, plaintiffs must show:  (1) that they suffered an "injury in fact"; (2) that a causal relationship exists between the injury and the challenged conduct; and (3) that it is likely, as opposed to merely speculative, that

the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000).  Abstract injury is not enough to demonstrate injury in fact.  Plaintiffs must allege that they have sustained or are in immediate danger of sustaining some direct injury as a result of the challenged conduct.  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (citing *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)).  The injury or threat of injury must be concrete and particularized, actual or imminent; not conjectural or hypothetical. *Id.* (citing *Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969); *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *United Pub. Workers v. Mitchell*, 330 U.S. 75, 89-91 (1947)). *See also Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020); *Friends of the Earth,* 528 U.S. at 180-81.  If the injury is alleged to be imminent rather than actual, plaintiffs must demonstrate that "the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 414 n.5 (2013)).  "'Allegations of *possible* future injury' are not sufficient."  *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in *Clapper*).

As the parties invoking federal jurisdiction, plaintiffs bear the burden to establish standing. *Lujan*, 504 U.S. at 561.

## Discussion

As an initial matter, I reject plaintiffs' assertion that the Mercy Plan's lack of ERISA protections in general is sufficient in itself to confer Article III standing on their constitutional challenge to the Plan. To hold otherwise would render meaningless the exceptions to ERISA coverage Congress included in this comprehensive legislation. *See* 29 U.S.C. § 1003(b). Accordingly, plaintiffs' claim that they have standing to "seek the benefits of ERISA writ large" (ECF 204 at header p. 10) without establishing a particularized injury to themselves is denied.

I turn now to the specific ERISA protections plaintiffs assert and that the Eighth Circuit identified to determine whether plaintiffs' complaint sufficiently alleges that the Mercy Plan's lack of such protections has caused them an injury in fact.

A.   Funding Requirements

ERISA establishes minimum funding requirements for employee benefit plans that are covered by its provisions. 29 U.S.C. § 1082. Plaintiffs claim that but for the unconstitutional application of church-exempt status, the Mercy Plan

would be subject to such minimum funding requirements.  Plaintiffs contend that the lack of ERISA's funding requirements under § 1082 places the Plan at substantial risk of being unable to pay Plan participants their accrued benefits.

A plan satisfies ERISA's minimum funding standard for a plan year if "the employers make contributions to or under the plan for any plan year which, in the aggregate, are sufficient to ensure that the plan does not have an accumulated funding deficiency . . . as of the end of the plan year."  29 U.S.C. § 1082(A)(2)(c). This requires, "in essence, that an employer's annual contributions to a defined benefit plan meet the current annual cost (determined under an approved actuarial method) of future pension benefits and administrative expenses."  *American Commc'n Ass'n, Local 10 I.B.T. v. Retirement Plan for Emps. of RCA Corp. & Subsidiary Co., RCA,* 488 F. Supp. 479, 482 (S.D.N.Y. 1980).  Plaintiffs acknowledge in their complaint[2] that the Mercy Plan here has its own funding requirements (*see* ECF 145 at ¶¶ 83, 119, 156B), but they argue that the lack of ERISA's minimum funding requirement to satisfy the current value of future benefits places them at substantial risk of not being paid their pension benefits in the future.  This is a hypothetical injury.

---

[2] The operative complaint here is plaintiffs' Consolidated Second Amended Class Action Complaint.  (ECF 145.)  Class certification was never sought or granted on this complaint.

Because plaintiffs do not allege that the Mercy Plan has failed to pay them benefits, they do not assert an actual injury.  *See Feather v. SSM Health*, No. 4:16CV1669 HEA, 2018 WL 3536613, at \*4 (E.D. Mo. July 23, 2018) (citing *Duncan v. Muzyn*, 885 F.3d 422, 427 (6th Cir. 2018) ("So what is Plaintiffs' injury here?  Start with what it is not:  any actual loss or decrease in their benefits.")).  And because the lack of ERISA's minimum funding requirement in the circumstances here does not create a "substantial risk" that plaintiffs' benefits will be affected in the future or that Plan default is "certainly impending," there is no imminent injury.  *Id.* (citing *In re SuperValu, Inc.*, 870 F.3d 763 (8th Cir. 2017); *Duncan*, 885 F.3d at 428).

The Plan is sufficiently funded to pay benefits for nearly a decade even if Mercy Health and the Participating Employers stop making the contributions required under the Plan.  *See Sanzone*, 954 F.3d at 1046.  The ability to pay a decade's worth of actuarial pension benefits does not show a certainly-impending default.  *See Feather*, 2018 WL 3536613, at \*4.  Moreover, given the hypothetical contingencies that must be met in order for plaintiffs' benefits to be adversely affected, there is no "substantial risk" that plaintiffs will be harmed if ERISA's minimum-funding standard is not in place:  *if* there are insufficient levels of contributions going forward, the Plan *could* default; and *if* Mercy Health

terminates the Plan upon default, plaintiffs *may* not receive benefits.  *See id.*  And this would all occur several years down the road.  Standing cannot be based on a "highly attenuated chain of possibilities."  *Clapper*, 568 U.S. at 410 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *Whitmore*, 495 U.S. at 157-60).  *See also Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) ("When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events[.]").  And, as Judge Autrey noted in *Feather*, several circuit courts addressing participants' claims of possible harm through plan default "have rejected similar hypothetical risks." *Feather*, 2018 WL 3536613, at *4 (citing *Duncan*, 885 F.3d at 428-29 ("Plaintiffs will only be harmed *if* the Plan runs out of money and *if* the TVA refuses to make up the shortfall *while* Plaintiffs are still receiving benefits from the Plan."); *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 529-31 (5th Cir. 2016) (concluding that "constitutional standing for defined-benefit plan participants requires imminent risk of default by the plan, such that the participant's benefits are adversely affected"); *Perelman v. Perelman*, 793 F.3d 368, 375 (3d Cir. 2015) (finding a risk of future adverse effects on benefits not an injury-in-fact); *David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013) ("We find these risk-based theories of standing unpersuasive, not least because they rest on a highly speculative foundation

- 8 -

lacking any discernable limiting principle.").

Plaintiffs' allegation that they will be harmed in the future because the Mercy Plan is not protected by ERISA's minimum funding requirement is too speculative to establish a concrete injury and is therefore insufficient to confer standing.

B.   Pension Benefit Guarantee Corporation Insurance

Under ERISA, the Pension Benefit Guarantee Corporation (PBGC) administers a plan-termination insurance program that pays the vested pension benefits of retirees whose defined-benefit plans fail and become unable to pay benefits themselves.  29 U.S.C. §§ 1302, *et seq.*  *See also Thole*, 140 S. Ct. at 1621. Plaintiffs contend that they are harmed here because, as an ERISA-exempt plan, the Mercy Plan is not insured by the PBGC, which places their receipt of vested pension benefits at risk.

PBGC insurance only provides a benefit if a plan terminates underfunded, which, as discussed above, has not occurred here, is not certainly impending, and does not have a substantial risk of occurring.  Therefore, because plaintiffs' theory of harm caused by the lack of ERISA-required insurance is based on a series of hypothetical contingencies too speculative to be considered "imminent," there is no injury in fact and plaintiffs lack standing to bring the claim.  *See Feather*, 2018

WL 3536613, at *5 (citing *Krauter v. Siemens Corp.*, No. 17-1662, 2018 WL

921542, at *3 (3d Cir. Feb. 16, 2018) (finding claim regarding lack of insurance

for retirement benefit was speculative because plaintiff "would only be harmed by

[its] absence if there were to be a default.")).

C.      Notice and Disclosure Requirements

        Plaintiffs request that defendants pay civil monetary penalties for their

failure to provide to plaintiffs and Plan participants certain notices that are required

under ERISA.  Plaintiffs also request that I order defendants to comply with

ERISA's reporting and disclosure requirements.[3]  Notably, plaintiffs do not allege

that they sustained any injury from defendants' alleged lack of ERISA-required

notices and disclosures, or that any injury is imminent.  "[I]ntangible injuries must

still be connected to a risk of real harm." *Feather*, 2018 WL 3536613, at *6 (citing

*Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1549 (2016)).  "Article III standing

requires a concrete injury even in the context of a statutory violation." *Spokeo*,

136 S. Ct. at 1549.  "For that reason, [a plaintiff] could not, for example, allege a

bare procedural violation, divorced from any concrete harm, and satisfy the injury-

---

[3] Specifically, plaintiffs seek ERISA's civil monetary penalties for defendants' alleged failure to provide notices of failure to meet minimum funding, funding notices, and pension benefit statements.  Plaintiffs also request that defendants be ordered to provide ERISA-required summary plan descriptions, annual reports, and summary annual reports.  (ECF 145 at ¶¶ 217-30, 255-56.)

in-fact requirement of Article III." *Id.*  Plaintiffs' complaint here does not allege any risk of real harm associated with the claimed procedural violations.

To the extent plaintiffs contend in their supplemental briefs on defendants' motion to dismiss that the Plan's lack of notice and disclosure deprives them of information necessary to plan their future (*see* ECF 195 at header p. 10, ECF 204 at header p. 13), I note that plaintiffs did not assert this alleged injury in their complaint.  On a motion to dismiss, I must view standing in light of the factual allegations of the complaint.  *Sanzone*, 954 F.3d at 1046.  I will therefore not address whether a lack of information for purposes of long-term planning constitutes a concrete injury sufficient to confer standing.

Accordingly, because plaintiffs' complaint does not connect the Mercy Plan's lack of notice and/or disclosure to any concrete injury, plaintiffs lack Article III standing to assert the claim here.

D.    Other Injury

Plaintiffs also allege in their complaint that the church-plan exemption gives Mercy Health an unfair advantage over its competitors because it does not have to pay premiums for PBGC insurance and is not required to make minimum contributions to fund the Plan.  But plaintiffs are not Mercy Health's competitors. Because plaintiffs themselves have no concrete stake in this aspect of their claim,

- 11 -

they lack Article III standing to bring it.  *See Thole*, 140 S. Ct. at 1619.

E.      "Able to Sue Under ERISA"

The Eighth Circuit stated that "but for the church-plan exemption," plaintiffs "would be able to sue under ERISA" to enforce the protections identified above. *Sanzone*, 954 F.3d at 1047.  The Supreme Court's decision in *Thole*, however, decided less than three months after the Eighth Circuit's opinion here, casts doubt on this statement.

In *Thole*, the Supreme Court determined that participants in an ERISA-covered defined-benefit pension plan did not have Article III standing to bring claims under ERISA for alleged mismanagement that resulted in losses to the plan. The Court reasoned that the plaintiff-participants did not have a concrete stake in the lawsuit because, win or lose, they would continue to receive the same pension benefits that they were already slated to receive, and for the rest of their lives.  140 S. Ct. at 1619.  And the Court noted that the complaint "did not plausibly and clearly claim that the alleged mismanagement of the plan substantially increased the risk that the plan and the employer would fail and be unable to pay the plaintiffs' future pension benefits."  *Id.* at 1622.  For the reasons set out above, plaintiffs' complaint here suffers the same infirmity.

The Court also held that the plaintiff-participants did not have standing to

bring claims on behalf of the plan itself – that is, that the plan has been injured by defendants' alleged conduct – because "the litigants themselves still must have suffered an injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute." *Thole*, 140 S. Ct. at 1620 (internal quotation marks and citations omitted). *See also Harley v. Minnesota Min. & Mfg. Co.*, 284 F.3d 901, 906 (8th Cir. 2002) ("limits on judicial power imposed by Article III counsel against permitting participants or beneficiaries who have suffered *no* injury in fact from suing to enforce ERISA fiduciary duties on behalf of the Plan.") (emphasis in *Harley*). For the reasons discussed above, the plaintiffs here have not suffered an injury in fact on their claims of minimum funding, lack of insurance, and lack of notice and disclosures and thus do not have a concrete stake in the outcome of this lawsuit. If the Mercy Plan has been harmed by the deficiencies alleged in plaintiffs' complaint, it is the Plan's claim to pursue, not the plaintiff-participants here.

Therefore, even if the Mercy Plan was not a church plan and was covered by ERISA, the plaintiffs here would nevertheless have no standing to bring their claims to enforce the ERISA protections they seek in this litigation.

F.     State Law Claims

Because I will dismiss plaintiffs' remaining constitutional claim for lack of

Article III standing, I continue to decline to exercise supplemental jurisdiction over plaintiffs' alternative state law claims pursuant to 28 U.S.C. § 1367(c)(3) and will not reinstate them to this action.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' claim that the church-plan exemption as applied to the Mercy Plan violates the Establishment Clause of the First Amendment of the Constitution is dismissed for lack of subject-matter jurisdiction.

**IT IS FURTHER ORDERED** that plaintiffs' alternative state law claims remain dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

A separate Order of Dismissal is entered herewith.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 4th day of November, 2020.

- 14 -